UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

JORDAN MANN,

**Docket No.: 07 CV 5691**

Plaintiff,

**PLAINTIFF'S RESPONSE**

-against-

**TO MANAGERS OF**
**TRUMP TOWER**

PLUS ONE FITNESS; TRUMP WORLD
TOWERS "ROBERT" DOE; JOHN HENDRICK
JAMIE MACDONALD DOES 1-10 Inclusive

**CONDOMINIUM AND**
**JOHN HENRIQUES'**
**FIRST NOTICE TO**
**PRODUCE TO**

Defendants.

**PLAINTIFF**

-------------------------------------------------------------x

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Jordan Mann, by

her attorney, Nkereuwem Umoh, Esq., hereby responds to the Defendants' requests for

Document as follows:

## GENERAL OBJECTIONS

1. Plaintiff will attempt to produce its non-privileged, non-objectionable responsive

documents. However, Plaintiff reserves its right to produce documents alter the thirty-day time

period.

2. Plaintiff shall respond to the requests as if directed only at documents within her

possession, custody or control.

3. This response is based upon documents presently available to and located by plaintiff and

is given without prejudice to plaintiff's right to produce additional documents at a later date

should they become located and available as a result of subsequent review of its records or as a

result of additional Investigation or discovery.

4. By producing or failing to produce some or all of the requested documents, Plaintiff does

not concede the relevance or materiality of any request or the subject to which it relates.

5. Plaintiff objects to all requests to the extent they seek documents protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege.

6. Inadvertent production of privileged Information by Plaintiff shall not constitute waiver of any applicable privilege or doctrine, Including, but not limited to, objections on the basis of competency, confidentiality, relevancy, materiality, privilege and/or admissibility as evidence as such objections may apply at trial or otherwise in this action.

7. Plaintiff objects to the requests to the extent they can for a duplicate production of documents previously produced to Defendants.

8. Plaintiff objects to each and every request to the extent they call for information protected by the United States Constitution and any applicable statutes, including, but not limited to, the right of privacy.

## SPECIFIC OBJECTIONS

1.    All documents, including e-mails, letters, correspondence, facsimiles, text, etc., referencing any communications between plaintiff and <u>any</u> of the defendants in the instant action, from the time plaintiff commenced employment with co-defendant PLUS ONE through the present;

### Response:

Plaintiff is continuing to search for any and all emails response to this demand.

2. All documents memorializing any meetings, telephone conversations or any other communications had between the plaintiff and <u>any</u> of the defendants in the

instant action, from the time of the plaintiff's employment with the defendants up to and including the present;

**Response:**

Plaintiff directs the defendants to the CD included with these responses. Plaintiff has no other documents memorializing any meeting or conversations between any of the defendants and plaintiff.

3. All documents, including attachments/exhibits thereto, submitted by the plaintiff to the Equal Employment Opportunity Commission regarding the instant matter, and all correspondence received by plaintiff from the Equal Employment Opportunity Commission in response thereto;

**Response:**

Plaintiff directs the Bates Stamped documents enclosed.

4. All documents which the plaintiff received from <u>any</u> of the co-defendants in the instant action in response to and/or with regard to the plaintiff's charge of discrimination filed with the EEOC;

**Response:**

Plaintiff directs the Bates Stamped documents enclosed.

5.    All documents in your possession regarding any of the defendants in the instant action, including but not limited to e-mails, correspondence, facsimiles, texts, handwritten notations/diaries, manuals, etc.

**Response:**

Plaintiff directs the Bates Stamped documents enclosed.

6.    All documents concerning any employment contracts and/or terms of employment between the plaintiff and <u>any</u> of the defendants in the instant action regarding the plaintiff's claims in the instant action;

**Response:**

Plaintiff directs the Bates Stamped documents enclosed.


7.    All documents regarding any medical, hospital, psychiatric, treatment and/or healthcare received by the plaintiff by any Health Care Provider as a result of the claims set forth in the plaintiff's Second Amended Complaint;

**Response:**

Plaintiff directs the Bates Stamped documents enclosed.


8.    The plaintiff's federal, state, and local income tax returns for the years 2005, 2006 and 2007;

**Response:**

Plaintiff has not filed her 2007 taxes.  Plaintiff awaits copies of her 2005 and 2006 tax returns and will deliver them shortly thereafter.


9.    All documents you may offer as evidence at trial;

**Response:**

Plaintiff has not yet determined the documents she may use at trial.  She reserves the right to supplement this response.

10.    All documents concerning any statements you have obtained concerning any of the factual allegations in this action;

**Response:**

Plaintiff directs the defendants to the CD included with these responses.  Plaintiff also directs defendants to the enclosed documents.

11.    A copy of any statement, oral or written, in the possession of plaintiff, of any party represented by the undersigned in this action;

**Response:**

Plaintiff directs the defendants to the CD included with these responses.  Plaintiff has no other documents memorializing any meeting or conversations between any of the defendants and plaintiff.

12.    Any photographs of the plaintiff depicting the plaintiff's hairstyle from the time she commenced her employment with co-

defendant, PLUS ONE, up to and including the date of her alleged termination of

employment therewith.

**Response:**

Plaintiff is continuing to search for photographs responsive to this request and reserves

the right to supplement this response.

Dated: Brooklyn, NY
  February 6, 2008

       Respectfully submitted,

       Nkereuwem Umoh
       255 LIVINGSTON STREET, 4TH FLOOR
       BROOKLYN, NEW YORK  11217
       Attorneys for Plaintiff
       Tele No.: (718) 360-0527
       E-mail: numoh@umohlaw.com

TO:
Harold J. Derschowitz
Attorneys for Defendants
BOARD OF MANAGERS OF TRUMP WORLD TOWER CONDOMINIUM, s/h/i as TRUMP
WORLD TOWERS, and JOHN HENDRIQUES, s/h/i as JOHN HENDRICK
120 Broadway
New York, New York  10271
(212) 964-6611

DEBORAH MARTIN NORCROSS
MARTIN NORCROSS, LLC
110 WALL STREET, RCG SUITE 26th FLOOR
NEW YORK, NEW YORK  10004
Attorneys for Defendant
PLUS ONE FITNESS and
JAMIE MACDONALD
E-Mail: dmnorcross@martinnorcross.com

CASE 1 of 7
(Continue on Reverse)

| Charge No. | Respondent | Charging Party |
|---|---|---|
| 520-2006-01431 | Plus One Holding | Jordan Manon |

| Date | Action | Entered | Reviewed/ |
|---|---|---|---|
| 3/15/0 | _illegible_ & unit 2 | M.M. | |
| 08/16/00 | Charges assigned to Ms. Marchese | M.M. | |
| | | | |
| 8/23 | Rec call for R's atty — Reg. ext. to 9/19 - granted - will fax letter of confirm — | _initials_ | |
| 8/24 | R's letter of confirm rec'd (faxed) | _initials_ | |
| 9/13/06 | CP's letter re chge in address & contact info | _initials_ | |
| | | | |
| 9/20/06 | R's P/S rec'd | _initials_ | |
| 9/21 | Ret CP's call - LM - copy of P/S will be mailed for rebuttal | _initials_ | |
| 9/21 | mailed | | |
| 10/23 | Ret call to CP (CP said she will not submit a rebuttal) | | |
| 11/2 | R's new atty - Deborah Martin Norchros called - will submit an add'l rep + copy of arbitration agreement | _initials_ | |
| 11/2 | R's new atty faxed letter of rep. | _initials_ | |

Form 159 (10/94)

JM 0001

Side 2

| Date | Action | Entered | Reviewed/ |
|------|--------|---------|-----------|
| 11/7/06 | Ret CP's call + gave status | [initials] | |
| 11/14/06 | Copy of P/S + CP for rebuttal due 12/1/06 | [initials] | |
| 11/20 | ret CP's call — she was upset because gave P/S "mailed 2x — she reminded me that on 10/24 she informed me (didn't initial put in log) that, she had spoken w/ her atty who advised her it was not nec — I then adv CP if she is repr by counsel, atty should enter his appearance & thereafter, all comm will be directed to her counsel | [initials] | |
| 11/30/06 | RFI faxed + mailed to P's atty | [initials] | |
| 3/20/07 | RTS refunded, Closure documents submitted to [illegible] for signature | [initials] | |
| 3/[ ]/07 | Mailed NAIS to CP & ATTY. | JB | |

JM 0002

EEOC Form 161-B (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To: Ms. Jordan Mann
80 St. Nicholas Avenue
#5A
New York, NY 10026

From: Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York 10004-2112

[　] *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 520-2006-01431 | Joan Marchese | (212) 336-3782 |

*(See also the additional information attached to this form.)*

### NOTICE TO THE PERSON AGGRIEVED:

**Title VII of the Civil Rights Act of 1964 and/or the Americans with Disabilities Act (ADA):** This is your Notice of Right to Sue, issued under Title VII and/or the ADA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII or the ADA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

[ x ]   More than 180 days have passed since the filing of this charge.

[ 　 ]   Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of the charge.

[ x ]   The EEOC is terminating its processing of this charge.

[ 　 ]   The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ 　 ]   The EEOC is closing your case. Therefore, your lawsuit under the ADEA must be filed in federal or state court **WITHIN 90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

[ 　 ]   The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of your charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

_____          MAR 2 3 2007
Spencer H. Lewis, Jr., District Director          *(Date Mailed)*

Enclosure(s)

cc:    Respondent:

Plus One Holdings, Inc.

JM 0003

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | 520-2006-01431 |
| ☒ EEOC | |

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) | |
|---|---|---|
| Ms. Jordan Mann | 917 705 9660 | |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
| 80 St. Nicholas Ave. #5A | NY NY 10026 | 10-8-68 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Plus One Holdings | 750 nationwide | 212 791 2300 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| 75 Maiden Lane, 8th fl, NY NY | | |
| NAME | | TELEPHONE NUMBER (Include Area Code) |
| Dave Milani | | 646 312 6225 |
| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
| Same as above | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☒ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☒ OTHER (Specify) Afro Hair Style.

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Respondents here subjected my to Race & Sex Discrimination, Hostile Work Environment based on my race, they retaliated against me in terminating my employment because of my race, color and possibly my Sex. I did not get severance pay because I am a black female. Part of the reasons I was fired is because I made complaints of Racial Harassment and racially threatening behavior to the police. I was subjected to hostile work environment and termination because I wore an afro hairdo. I was fired because I also reported the racial harassment to our COO & President of my Company

Please see attached Statement for Complete story.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>EEOC NYDO ENFORCEMENT<br><br>Date        Charging Party (signature) | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC FORM 5 (REV. 3/01)

(please go to statement where the notary public signed)                    Jm0004

MORRDEN J. JUDA
NOTARY PUBLIC State of New York
No. GU465935
Qualified in New York County
Commission Expires

*Submitted by Jordan Mann*

STATE OF NEW YORK
COUNTY OF NEW YORK
08/31/06

**JORDAN MANN'S statement**

In August 2002, Plus One Fitness hired me, Jordan Mann as a massage therapist. I performed massage duties at different corporate sites managed by Plus One for other companies such as Goldman Sach, Merrill Lynch. On March 6, 2006, I took on additional duties as a full-time receptionist at the Trump World Towers site. At my initial hire date, my hair was an Afro and has been the same since. No one ever objected to my hair until April 5, 2006. Below is an account of when the racial discrimination and harassment started within the scope of my employment.

**April 5, 2006 @ Trump World Tower**
Plus One regional vice president Jamie MacDonald told me that I was not allowed to wear my Afro at the Trump World Towers and ordered me to change it right away. He said my Afro violated the Trump Organization's policy and if I didn't get rid of it or change it, there would be serious consequences, meaning termination. He also made derogatory comments about my hair. I told him that what he said was racially and culturally insensitive and disrespectful. Immediately after being reprimanded by MacDonald because of my hair, I called my immediate supervisor Tom Niszczak to report the harassment and discrimination. Niszczak told me to call the vice president of human resources Bob Welter.

**April 6, 2006**
The next day, MacDonald furnished me with a copy of the Trump Organization's hair policy. He continued to say I violated the policy which stated, "buns, twists, should not be more than 3 inches above head." I told him that my hair is not a bun nor twist and I couldn't change the way my hair grew. MacDonald also emailed my immediate supervisor Tom Nizsczak who hired me, that the Trump Organization objected to my Afro. I told MacDonald again that my hair grew naturally like this. MacDonald said that the Organization didn't make allowances for "individuals" with hair like me. He warned me again to change my hair.

I called Bob Welter and expressed my concern about Jamie McDonald's harassment. I repeated to Bob that I felt that this was racially and culturally discriminatory. During the conversation Bob asked me what did my hair look like. I said I had an Afro and that I felt I was being harassed because James didn't like my Afro because it showed my African-American heritage. He then said he would investigate the matter next week and get back to me.

**April 10, 2006 @ Plus One Corporate Headquarters**
Had a meeting with manager of Human Resources, Heather Davis. I repeated the incidents of harassment and discrimination to which I had been subjected. She told me that I must cut my hair because it was "shocking." She gave me an ultimatum: either cut off my hair or transfer to another Plus One site. I said I wouldn't cut off my hair, so I was forced to take a transfer. Then she said that a transfer wasn't guaranteed and that it looked likely that I would not have a job. I asked for her statements in writing and she refused.

I was puzzled because I initiated the meeting to discuss the harassment and discrimination but instead, Davis continued the discrimination because she said my hair was unacceptable too. She said my hair was inappropriate because it was "shocking," unsuitable for a five star caliber place such as Trump Tower. I asked why my discrimination allegations were not being investigated. I then said I had filed paperwork with the Equal Employment Opportunity Commission. She said that my job was in jeopardy if I didn't do something about my hair. Meeting was promptly adjourned.

**April 11, 2006**
Because I: 1) felt that Heather Davis continued the discrimination, 2)didn't know how my hair violated hair policy and 3) unclear about my employment status with Plus One, I emailed Vice President of Human Resources, Bob Welter to request a meeting to get answers. No reply that day.

JM 0005

No word from Chris Ciatto. I become increasingly worried and anxiety-ridden because Bob Welter said I was going to be fired.

**Friday, May 5, 2006**
As a last resort, I emailed the president of the company Michael Motta. He said my Afro was now appropriate but he refused to investigate my harassment/discrimination claim.

**A couple weeks later**
The new Trump World Tower site manager Chris Garcia singles me out again in reference to the hair/grooming policy. I again contacted Motta about the harassment. Nothing was ever done or investigated.

**June 8**
The new site manager Mike Murray asked me to find out the full identity of a resident, known as "Robert." who was verbally harassing another resident Lily Wong. While I trying to find out the information for Murray, the resident Robert came down to start harassing me saying that it was none of my business to know that information. For the rest of my shift, Robert cursed at me and verbally threatened me and Plus One staff. Visibly shaken, my manager, Murray told me to go home and he would take care of handling the abusive resident. Later that day, he told me that Trump security and the building manager was alerted and that the resident was "taken care of."

**June 9**
The next day on my shift, the same resident came into the healthclub area and started threatening me again. Extremely frightened, police and Trump security were called. After the police and Trump security left the healthclub, the regional vice president Jamie MacDonald called me and told me to go home indefinitely with paid. I was sent home for calling the police to protect myself against a resident/user of the healthclub.

**June 13**
New vice president of human resources Dave Milani said that I should look for another job because upper management didn't like the harassment/discrimination charges I was alleging and filing with the EEOC.

**June 16**
Dave Milani fired me over the phone. He said I was fired because I called the police. He continued to say "Trump didn't like it and we here at PlusOne didn't like that." In addition, he said I would not be eligible for severance because I had intentions to follow through with my EEOC case.

Jm 0006

**April 12, 2006**
Approximately 7:30am, Chief Operating Office Chris Ciatto paid me a surprise visit at the Trump World Tower site. He told me he was responding to my action of contacting the EEOC. I told him about the discrimination and harassment I felt I was being subjected to. Ciatto asked me why the other Black women's hair in the office didn't look like mine; hence, he told me to get braids or cut my hair. I told him that many Black women chemically straighten their hair. I also said that I don't chemically straighten my hair for health reasons nor would I get braids because the synthetic material of braids would damage my chemical free-natural hair. Ciatto ended the meeting with my employment still being in question.

**April 20, 2006**
I email Chris Ciatto to find out who has the final word on my termination. No response.

Late morning, Bob Welter, vice president of Human Resources calls me at the Trump World Tower site. He said that Chris Ciatto emailed Bob to handle the situation.  We set up a meeting the next day.

**April 21, 2006**
Met with Bob Welter, vice president of Human Resources who continued to say that my hair violated policy because it did not comply with the rule: "buns, twists, etc., should not be more than three inches above head." We then made a verbal agreement that if I could prove my hair was not more than three inches above my head, I could continue to work at Trump World Tower. I put a ruler on top of my skull and Bob verbally confirmed that my hair was not three inches above my hair. He then did not honor our agreement and said he didn't like my hair because " it stands too straight up" and that it was unacceptable for a place like Trump. He sent me home for one day to figure out how to change my hair to suit him.

I also told him about the discrimination and harassment I felt I was being subjected to but he would not address it and refused to investigate it.

**April 27, 2006**
I sent another email to Bob Welter stating that I proved that I did not violate their interpretation of the hair policy but wanted something in writing from Bob as to why he introduced a new reason why he felt I didn't comply.  Up to this date, no manager/executive was able to say how my hair violated policy. Each Plus One worker only expressed his or her dislike to the way my Afro looked and grew.

**April 28,2006**
Approximately 1:40pm I retrieved an email from Bob Welter. At my dismay, the discrimination was not addressed or why Plus One, acting as a Trump representative.

**Approximately 5:00pm**
My immediate supervisor Tom Niszczak, called me on my cell phone to say that Bob Welter said that there was a condition that if I didn't change my hair, then I would be terminated.

**Monday, May 1, 2006**
I emailed Chris Ciatto, COO again. At this point, it had been weeks and he had not gotten back to me from our first meeting on April 12. And as a result, never addressed anything or never got back to me. In the email to Chris, I recapped how James, Heather and Bob Welter discriminated against me and that no one in human resources chose to investigate my harassment and discrimination charges. I further wrote of my considerable emotional and physical stress I had been experiencing because of all the incidents. And because of the undue humiliation I had been subjected to, I said I would not take any more meetings regarding my hair without my lawyer present.

JM00D 7

## MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:    (609) 249-5860
FACSIMILE:    (609) 945-3912
E-mail:    dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

# FAX COVER SHEET

**TO:**        Joan Marchese

**FAX:**       (212) 336-3625

**FROM:**    Deborah Martin Norcross

**DATE:**     February 16, 2007

**RE:**        Mann v. Plus One Holdings, Inc.

**NUMBER OF PAGES (INCLUDING COVER):**   7

**MESSAGE:**  We received your message that you do not have pages 15 through 20 of Plus One's Employee Handbook. Copies of those pages are attached.



This cover sheet and any documents that accompany it contain confidential and legally privileged information intended only for the individual(s) named.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or other use of these documents is strictly prohibited and that the documents should be returned to the above address immediately.

Jmc 0008

### H.    INVESTIGATIONS OF CURRENT EMPLOYEES

The Company may occasionally find it necessary to investigate current Employees, where behavior or other relevant circumstances raise relevant questions. Employee investigations may, where appropriate, include credit reports and investigations of criminal convictions. In the event that a background check is conducted, the Company will comply with the federal Fair Credit Reporting Act and applicable state laws, including providing the Employee with any required notices and forms. Employees subject to an investigation are required to cooperate with the Company's lawful efforts to obtain relevant information, and may be disciplined up to and including termination for failure to do so.

### I.    PERFORMANCE EVALUATIONS

Performance evaluations may be conducted from time to time to provide both you and your Manager with the opportunity to discuss your job tasks, identify and correct weaknesses, encourage and recognize strengths, and discuss methods for improving your performance. However, please understand that a positive performance evaluation does not guarantee an increase in salary, a promotion, or continued employment. Compensation increases and the terms and conditions of employment, including job assignments, transfers, promotions, and demotions, are determined by and at the discretion of Plus One. In addition to these more formal performance evaluations, the Company encourages you and your Manager to discuss your job performance on an ongoing basis.

### J.    IMPROVING EMPLOYEE JOB PERFORMANCE

Plus One believes in the principle that Employees should ordinarily be given the opportunity to improve upon any deficiencies in their job performance. When the Company determines that an Employee is a candidate for improvement, the Company will attempt to help the Employee meet the Company's expectations. However, any effort to work with Employees to overcome performance problems should not be deemed as changing the Company's policy of at-will employment.

### K.    CLIENT RELATIONS

Plus One's success depends on satisfying our clients. Employees of Plus One are expected to treat clients courteously and with the utmost respect at all times. You must attend to our clients' questions and requests promptly and professionally. If you need assistance, please contact your Manager or another Employee who you know will be able to assist you and/or the client.

Updated: May, 2001

FEB 1 6 2007
EEOC-NYDO ENFORCEMENT

JM0009

### L.  CONFIDENTIALITY

Information about Plus One, its Employees, clients, suppliers, and vendors is to be kept confidential and divulged only to individuals within the Company with both a need to receive and authorization to receive the information. If in doubt as to whether information should be divulged, err in favor of not divulging information and discuss the situation with your Manager. All records and files maintained by the Company are confidential and remain the property of the Company. Records and files are not to be disclosed to any outside party without the express permission of the President, Chief Operating Officer, or Vice President of Human Resources. Confidential information includes, but is in no way limited to: financial records; business, marketing, and strategic plans; personnel and payroll records regarding current and former Employees; the identity of, contact information for, and any other account information on clients, vendors, and suppliers; inventions, videos, programs, members' files or prescriptions, trade secrets, formulas, techniques, and processes; and any other documents or information regarding the Company's operations, procedures, or practices. Confidential information may not be removed from Company premises without express authorization. Confidential information obtained during or through employment with the Company may not be used by any Employee for the purpose of furthering current or future outside employment or activities or for obtaining personal gain or profit. The Company reserves the right to avail itself of all legal or equitable remedies to prevent impermissible use of confidential information or to recover damages incurred as a result of the impermissible use of confidential information. Certain Employees may also be required to enter into written confidentiality agreements confirming their understanding of the Company's confidentiality policies.

Employees are instructed to refer all employment reference inquiries regarding current or former Plus One employees to the Human Resources Department.

### M.  EMPLOYEE DRESS & PERSONAL APPEARANCE

You are expected to report to work well groomed, clean, and dressed professionally according to the requirements of your position. Employees may be required to wear uniforms provided by Plus One. Please contact your Manager for specific information regarding acceptable attire for your position. If you report to work dressed or groomed unprofessionally, you may be prevented from working until you return to work well groomed and wearing the proper attire.



FEB 16 2007
EEOC-NYCO-ENFORCEMENT

JM 0040

## VI.    PLUS ONE FACILITIES

### A.    POLICIES AGAINST WORKPLACE VIOLENCE

#### 1.    Statement of Policy

Acts or threats of physical violence, including intimidation, harassment, and/or coercion, that involve or affect the Company or that occur on Company property or in the conduct of Company business off Company property, will not be tolerated. This prohibition against threats and acts of violence applies to all persons involved in Company operations, including, but not limited to, Plus One personnel, contract workers and temporary employees. Violations of this policy, by any individual, may lead to disciplinary action, up to and including termination of employment, and/or legal action, as appropriate.

This policy is intended to bring Plus One into compliance with existing legal provisions requiring employers to provide a safe workplace; it is not intended to create any obligations beyond those required by existing law.

#### 2.    Definitions

Workplace violence is any intentional conduct that is sufficiently severe, offensive, or intimidating to cause an individual to be adversely affected with respect to – or to reasonably fear for – his or her personal safety or the safety of his or her family, friends, and/or property such that employment conditions are altered or a hostile, abusive, or intimidating work environment is created for one or more Plus One Employees. Workplace violence may involve any threats or acts of violence occurring on Company premises, regardless of the relationship between the Company and the parties involved in the incident. It also includes threats or acts of violence that affect the business interests of the Company or that may lead to an incident of violence on Company premises. Threats or acts of violence occurring off Company premises that involve Employees, agents, or individuals acting as a representative of the Company, whether as victims of or active participants in the conduct, may also constitute workplace violence. Specific examples of conduct that may constitute threats or acts of violence under this policy, include, but are not limited to, the following:

a.  Threats or acts of physical or aggressive contact directed toward another individual;

b.  Threats or acts of physical harm directed toward an individual or his/her family, friends, associates, or property;

c.  The intentional destruction or threat of destruction of Company property or another Employee's property;

d.  Harassing or threatening phone calls;

e.  Surveillance;

f.  Stalking;

g.  Veiled threats of physical harm or similar intimidation; and

h.  Any conduct resulting in the conviction under any criminal code provision relating to violence or threats of violence that adversely affects the Company's legitimate business interests.

Updated: May, 2001                                  17                          
                                                                                 FEB 1 6 2007
                                                                            EEOC-NYDO ENFORCEMENT

JM0011

## MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:     (609) 249-5860
FACSIMILE:       (609) 945-3912
E-mail:   dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

# FAX COVER SHEET

**TO:**        Joan Marchese

**FAX:**       (212) 336-3625

**FROM:**      Deborah Martin Norcross

**DATE:**      February 16, 2007

**RE:**        Mann v. Plus One Holdings, Inc.

**NUMBER OF PAGES (INCLUDING COVER):**   7

**MESSAGE:**   We received your message that you do not have pages 15 through 20 of Plus One's Employee Handbook. Copies of those pages are attached.



FEB 1 6 2007

EEOC·NYDO·ENFORCEMENT

This cover sheet and any documents that accompany it contain confidential and legally privileged information intended only for the individual(s) named.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or other use of these documents is strictly prohibited and that the documents should be returned to the above address immediately.

JM 0012

### H.    INVESTIGATIONS OF CURRENT EMPLOYEES

The Company may occasionally find it necessary to investigate current Employees, where behavior or other relevant circumstances raise relevant questions. Employee investigations may, where appropriate, include credit reports and investigations of criminal convictions. In the event that a background check is conducted, the Company will comply with the federal Fair Credit Reporting Act and applicable state laws, including providing the Employee with any required notices and forms. Employees subject to an investigation are required to cooperate with the Company's lawful efforts to obtain relevant information, and may be disciplined up to and including termination for failure to do so.

### I.    PERFORMANCE EVALUATIONS

Performance evaluations may be conducted from time to time to provide both you and your Manager with the opportunity to discuss your job tasks, identify and correct weaknesses, encourage and recognize strengths, and discuss methods for improving your performance. However, please understand that a positive performance evaluation does not guarantee an increase in salary, a promotion, or continued employment. Compensation increases and the terms and conditions of employment, including job assignments, transfers, promotions, and demotions, are determined by and at the discretion of Plus One. In addition to these more formal performance evaluations, the Company encourages you and your Manager to discuss your job performance on an ongoing basis.

### J.    IMPROVING EMPLOYEE JOB PERFORMANCE

Plus One believes in the principle that Employees should ordinarily be given the opportunity to improve upon any deficiencies in their job performance. When the Company determines that an Employee is a candidate for improvement, the Company will attempt to help the Employee meet the Company's expectations. However, any effort to work with Employees to overcome performance problems should not be deemed as changing the Company's policy of at-will employment.

### K.    CLIENT RELATIONS

Plus One's success depends on satisfying our clients. Employees of Plus One are expected to treat clients courteously and with the utmost respect at all times. You must attend to our clients' questions and requests promptly and professionally. If you need assistance, please contact your Manager or another Employee who you know will be able to assist you and/or the client.



Received    Feb-16-2007    10:18am    From-609 945 3912    To-EEOC-NYDO (7)    Page 002

JM0013

**L.    CONFIDENTIALITY**

Information about Plus One, its Employees, clients, suppliers, and vendors is to be kept confidential and divulged only to individuals within the Company with both a need to receive and authorization to receive the information. If in doubt as to whether information should be divulged, err in favor of not divulging information and discuss the situation with your Manager. All records and files maintained by the Company are confidential and remain the property of the Company. Records and files are not to be disclosed to any outside party without the express permission of the President, Chief Operating Officer, or Vice President of Human Resources. Confidential information includes, but is in no way limited to: financial records; business, marketing, and strategic plans; personnel and payroll records regarding current and former Employees; the identity of, contact information for, and any other account information on clients, vendors, and suppliers; inventions, videos, programs, members' files or prescriptions, trade secrets, formulas, techniques, and processes; and any other documents or information regarding the Company's operations, procedures, or practices. Confidential information may not be removed from Company premises without express authorization. Confidential information obtained during or through employment with the Company may not be used by any Employee for the purpose of furthering current or future outside employment or activities or for obtaining personal gain or profit. The Company reserves the right to avail itself of all legal or equitable remedies to prevent impermissible use of confidential information or to recover damages incurred as a result of the impermissible use of confidential information. Certain Employees may also be required to enter into written confidentiality agreements confirming their understanding of the Company's confidentiality policies.

Employees are instructed to refer all employment reference inquiries regarding current or former Plus One employees to the Human Resources Department.

**M.    EMPLOYEE DRESS & PERSONAL APPEARANCE**

You are expected to report to work well groomed, clean, and dressed professionally according to the requirements of your position. Employees may be required to wear uniforms provided by Plus One. Please contact your Manager for specific information regarding acceptable attire for your position. If you report to work dressed or groomed unprofessionally, you may be prevented from working until you return to work well groomed and wearing the proper attire.

Updated: May, 2001                    18

RECEIVED
FEB 16 2007
EEOC-NYDO-ENFORCEMENT

## VI.   PLUS ONE FACILITIES

### A.   POLICIES AGAINST WORKPLACE VIOLENCE

#### 1.   Statement of Policy

Acts or threats of physical violence, including intimidation, harassment, and/or coercion, that involve or affect the Company or that occur on Company property or in the conduct of Company business off Company property, will not be tolerated.  This prohibition against threats and acts of violence applies to all persons involved in Company operations, including, but not limited to, Plus One personnel, contract workers and temporary employees. Violations of this policy, by any individual, may lead to disciplinary action, up to and including termination of employment, and/or legal action, as appropriate.

This policy is intended to bring Plus One into compliance with existing legal provisions requiring employers to provide a safe workplace; it is not intended to create any obligations beyond those required by existing law.

#### 2.   Definitions

Workplace violence is any intentional conduct that is sufficiently severe, offensive, or intimidating to cause an individual to be adversely affected with respect to – or to reasonably fear for – his or her personal safety or the safety of his or her family, friends, and/or property such that employment conditions are altered or a hostile, abusive, or intimidating work environment is created for one or more Plus One Employees.  Workplace violence may involve any threats or acts of violence occurring on Company premises, regardless of the relationship between the Company and the parties involved in the incident.  It also includes threats or acts of violence that affect the business interests of the Company or that may lead to an incident of violence on Company premises.  Threats or acts of violence occurring off Company premises that involve Employees, agents, or individuals acting as a representative of the Company, whether as victims of or active participants in the conduct, may also constitute workplace violence.   Specific examples of conduct that may constitute threats or acts of violence under this policy, include, but are not limited to, the following:

a.  Threats or acts of physical or aggressive contact directed toward another individual;

b.  Threats or acts of physical harm directed toward an individual or his/her family, friends, associates, or property;

c.  The intentional destruction or threat of destruction of Company property or another Employee's property;

d.  Harassing or threatening phone calls;

e.  Surveillance;

f.  Stalking;

g.  Veiled threats of physical harm or similar intimidation; and

h.  Any conduct resulting in the conviction under any criminal code provision relating to violence or threats of violence that adversely affects the Company's legitimate business interests.

Updated: May, 2001                           17

FEB 1 6 2007
EEOC-NYDO-ENFORCEMENT

Threats of workplace violence do not refer to occasional comments of a socially acceptable nature. Rather, it refers to behavior that is personally offensive, threatening, or intimidating.

### 3.    Enforcement

Any person who engages in a threat of violence or violent action on Company property may be removed from the premises as quickly as safety permits and may be required, at the Company's discretion, to remain off Company premises pending the outcome of an investigation of the incident.

When threats are made or acts of violence are committed by an Employee, a judgment will be made by the Company as to what actions are appropriate with respect to that Employee, including disciplinary action up to and including discharge.

**Important Note:** Plus One will make the sole determination of whether, and to what extent, threats or acts of violence will be acted upon by the Company. In making this determination, the Company may undertake a case-by-case analysis in order to ascertain whether there is a reasonable basis to believe that workplace violence has occurred. **No provision of this policy alters the at-will nature of employment at Plus One.**

## B.    OPERATION OF VEHICLES

Employees driving on Company business—whether in a Company-owned or leased vehicle, a rented vehicle, an Employee's own vehicle, or any other vehicle—are not permitted to engage in unauthorized activity or travel. The use of Company-owned or leased vehicles and rental of vehicles for Company business is limited to authorized Employees. These vehicles must only be used in work-related activities and may not be used for personal business or activities without the express prior approval of management.

All Employees authorized to drive Company-owned or leased vehicles or to rent vehicles for use in conducting Company business must possess a current, valid driver's license and an acceptable driving record. Any change in license status or driving record must be reported to management immediately.

A valid driver's license must be in your possession while operating a vehicle off or on Company property. It is the responsibility of every Employee to drive safely and obey all traffic, vehicle safety, and parking laws or regulations. Drivers must demonstrate safe-driving habits at all times.

Certain Employees may drive their own personal vehicles while conducting Company business. These Employees must maintain adequate personal automobile liability insurance. Employees doing so should promptly submit an expense report detailing the number of miles driven on Company business. The Company will pay mileage reimbursement in accordance with applicable reimbursement rates. Employees are expected to observe the above policies while driving on Company business, even if operating personal vehicles.

## C.    USE OF EQUIPMENT

All Company property—including but not limited to desks, storage areas, work areas, lockers, file cabinets, computer systems, office telephones, cellular telephones, modems, facsimile machines, duplicating machines, exercise equipment and exercise testing equipment—must be used properly and maintained in good working order. Employees who lose, misappropriate, or misuse Company property may be personally liable for the replacement or repair of the item and may be subject to discipline, up to and including discharge.

Updated: May, 2001    18

FEB 1 6 2007

EEOC-NYDO-ENFORCEMENT

Jm 0016

The Company reserves the right, at all times and without prior notice, to inspect and search any and all of its property to determine whether any Company policy has been violated, or when necessary for purposes of promoting safety in the workplace or compliance with applicable law. These inspections may be conducted during or after business hours and in the presence or absence of the Employee.

In order to ensure the safety and security of Employees and clients, and to protect the Company's legitimate business interests, Plus One reserves the right to question and inspect or search any Employee or other individual entering onto or leaving Company premises. The inspection or search may include any packages or items that the individual may be carrying, including briefcases, handbags, knapsacks, and shopping bags. These items are subject to inspection and search at any time, with or without prior notice. The Company also may require Employees while on the job or on the Company's premises to agree to reasonable inspection of their personal property and/or persons. The individual may be requested to self-inspect his or her personal property or person by displaying the contents of any packages and/or turning out his or her pockets in the presence of a representative of the Company, typically a management Employee of the same gender. The Company will not tolerate an Employee's refusal to cooperate in these procedures.

The Company's technical resources, such as its computer, voice mail, and e-mail systems, are provided for use in Company business and are to be reviewed, monitored, and used in that pursuit only, except as provided in this policy. As a result, computer data, voice mail messages, and e-mail transmissions are readily available to numerous persons. That which is stored or transmitted on the Company's computer systems or other technical resources is subject to the investigation, search, and review of others in accordance with this policy. In addition, any electronically stored communications sent or received from others may be retrieved and reviewed when, in Plus One's judgment, doing so serves the legitimate business interests and obligations of the Company.

Employees are otherwise permitted to use the Company's designated equipment for occasional, non-work purposes with permission from their direct Manager. Nevertheless, Employees have no right of privacy as to any information or file maintained in or on the Company's property or transmitted or stored through the Company's computer systems, voice mail, e-mail, or other technical resources. All bills and other documentation related to the use of Company equipment, property, and technical resources are the property of the Company and may be reviewed and used for purposes that the Company considers appropriate.

Employees may access only files or programs, whether computerized or not, that they have permission or are authorized to enter. Computer software is protected from unauthorized copying and use by law. Unauthorized copying or use of computer software may expose both the Company and the individual Employee to substantial fines and/or penalties. Therefore, Employees may not load personal software onto the Company's computer system, and may not copy software from Company's computer system for personal use. All Employees must contact the Vice President of Operations for permission to install any software on the Company's computer system. Unauthorized review, duplication, dissemination, removal, installation, damage, or alteration of files, passwords, computer systems or programs, or other property of the Company, or improper use of information obtained by unauthorized means, may be grounds for disciplinary action, up to and including discharge.

Messages stored and/or transmitted by voice mail or e-mail must not contain content that may reasonably be considered harassing to any Employee or that creates a hostile environment for any Employee.

Updated: May, 2001                                   19



FEB 16 2007

EEOC-NYDO ENFORCEMENT

JM0017

### D.    SOLICITATION & DISTRIBUTION OF LITERATURE

Approaching fellow Employees in the workplace regarding outside activities, organizations, or causes, regardless of how worthwhile, important, or benevolent, can create unnecessary apprehension and pressures for fellow Employees. This conduct is, therefore, generally inappropriate. The Company has established rules, applicable to all Employees, to govern solicitation and distribution of written material during working time and entry onto the premises and work areas. All Employees are expected to comply strictly with these rules. 1. No Employee shall solicit or promote support for any cause or organization during his or her working time or during the working time of the Employee or Employees at whom the activity is directed; 2. No Employee shall distribute or circulate any written or printed material in work areas at any time, during his or her working time, or during the working time of the Employee or Employees at whom the activity is directed; and 3. Under no circumstances will non-Employees be permitted to solicit or to distribute written material for any purpose on Company property. As used in this policy, "working time" includes all time for which an Employee is paid and/or is scheduled to be performing services for the Company; it does not include break periods, meal periods, or periods in which an Employee is not, and is not scheduled to be, performing services or work for the Company.

### E.    SMOKING POLICY

Employees, clients, vendors, and other guests are not allowed to smoke in Company or clients' facilities at any time.

### F.    HEALTH & SAFETY

The health and safety of Employees and others on Company property are of critical concern to Plus One. The Company intends to comply with all health and safety laws applicable to our business.

To this end, the Company must rely upon Employees to ensure that work areas are kept safe and free of hazardous conditions. Employees are required to be conscientious about workplace safety, including proper operating methods and known dangerous conditions or hazards. Any unsafe conditions or potential hazards should be reported to a Manager *immediately*, even if the problem appears to be corrected. Any suspicion of a concealed danger present on the Company's premises, or in a product, facility, piece of equipment, process, or business practice for which the Company is responsible should be brought to the attention of a Manager or the Vice President Director of Operations *immediately*.

Periodically, the Company may issue rules and guidelines governing workplace safety and health. All Employees should familiarize themselves with these rules and guidelines as strict compliance will be expected. Contact your Manager for copies of current rules and guidelines. Failure to comply strictly with rules and guidelines regarding health and safety or negligent work performance that endangers health and safety that will not be tolerated.

Any workplace injury, accident, or illness *must* be reported to the Employee's Manager as soon as possible, regardless of the severity of the injury or accident. If medical attention is required immediately, Managers will assist Employees in obtaining medical care, after which the details of the injury or accident must be reported.

Updated: May, 2001                    20



FEB 1 6 2007

EEOC NYDO ENFORCEMENT

Jm 0018

## MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:     (609) 249-5860
FACSIMILE:       (609) 945-3912
E-mail:   dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

# FAX COVER SHEET

**TO:**        Joan Marchese

**FAX:**       (212) 336-3625

**FROM:**      Deborah Martin Norcross

**DATE:**      February 16, 2007

**RE:**        Mann v. Plus One Holdings, Inc.

**NUMBER OF PAGES (INCLUDING COVER):**   7

**MESSAGE:**  We received your message that you do not have pages 15 through 20 of Plus One's Employee Handbook. Copies of those pages are attached.

This cover sheet and any documents that accompany it contain confidential and legally privileged information intended only for the individual(s) named.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or other use of these documents is strictly prohibited and that the documents should be returned to the above address immediately.

FEB 1 6 2007

EEOC-NYDO ENFORCEMENT

JM0019

## H.     INVESTIGATIONS OF CURRENT EMPLOYEES

The Company may occasionally find it necessary to investigate current Employees, where behavior or other relevant circumstances raise relevant questions. Employee investigations may, where appropriate, include credit reports and investigations of criminal convictions. In the event that a background check is conducted, the Company will comply with the federal Fair Credit Reporting Act and applicable state laws, including providing the Employee with any required notices and forms. Employees subject to an investigation are required to cooperate with the Company's lawful efforts to obtain relevant information, and may be disciplined up to and including termination for failure to do so.

## I.     PERFORMANCE EVALUATIONS

Performance evaluations may be conducted from time to time to provide both you and your Manager with the opportunity to discuss your job tasks, identify and correct weaknesses, encourage and recognize strengths, and discuss methods for improving your performance. However, please understand that a positive performance evaluation does not guarantee an increase in salary, a promotion, or continued employment. Compensation increases and the terms and conditions of employment, including job assignments, transfers, promotions, and demotions, are determined by and at the discretion of Plus One. In addition to these more formal performance evaluations, the Company encourages you and your Manager to discuss your job performance on an ongoing basis.

## J.     IMPROVING EMPLOYEE JOB PERFORMANCE

Plus One believes in the principle that Employees should ordinarily be given the opportunity to improve upon any deficiencies in their job performance. When the Company determines that an Employee is a candidate for improvement, the Company will attempt to help the Employee meet the Company's expectations.  However, any effort to work with Employee to overcome performance problems should not be deemed as changing the Company's policy of at-will employment.

## K.     CLIENT RELATIONS

Plus One's success depends on satisfying our clients. Employees of Plus One are expected to treat clients courteously and with the utmost respect at all times. You must attend to our clients' questions and requests promptly and professionally. If you need assistance, please contact your Manager or another Employee who you know will be able to assist you and/or the client.

FEB 16 2007

EEOC NY00 ENFORCEM

JM 0020

## L.    CONFIDENTIALITY

Information about Plus One, its Employees, clients, suppliers, and vendors is to be kept confidential and divulged only to individuals within the Company with both a need to receive and authorization to receive the information. If in doubt as to whether information should be divulged, err in favor of not divulging information and discuss the situation with your Manager. All records and files maintained by the Company are confidential and remain the property of the Company. Records and files are not to be disclosed to any outside party without the express permission of the President, Chief Operating Officer, or Vice President of Human Resources. Confidential information includes, but is in no way limited to: financial records, business, marketing, and strategic plans; personnel and payroll records regarding current and former Employees; the identity of, contact information for, and any other account information on clients, vendors, and suppliers; inventions, videos, programs, members' files or prescriptions, trade secrets, formulas, techniques, and processes; and any other documents or information regarding the Company's operations, procedures, or practices.    Confidential Information may not be removed from Company premises without express authorization.    Confidential information obtained during or through employment with the Company may not be used by any Employee for the purpose of furthering current or future outside employment or activities or for obtaining personal gain or profit. The Company reserves the right to avail itself of all legal or equitable remedies to prevent impermissible use of confidential information or to recover damages incurred as a result of the impermissible use of confidential information. Certain Employees may also be required to enter into written confidentiality agreements confirming their understanding of the Company's confidentiality policies.

Employees are instructed to refer all employment reference inquiries regarding current or former Plus One employees to the Human Resources Department.

## M.    EMPLOYEE DRESS & PERSONAL APPEARANCE

You are expected to report to work well groomed, clean, and dressed professionally according to the requirements of your position. Employees may be required to wear uniforms provided by Plus One. Please contact your Manager for specific information regarding acceptable attire for your position. If you report to work dressed or groomed unprofessionally, you may be prevented from working until you return to work well groomed and wearing the proper attire.



Received    Feb-16-2007  10:11am    From-609 945 3912        To-EEOC-NYDO (7)        Page  003

JM 0021

## MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:        (609) 249-5860
FACSIMILE:          (609) 945-3912
E-mail:    dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

# FAX COVER SHEET

**TO:**        Joan Marchese

**FAX:**       (212) 336-3625

**FROM:**      Deborah Martin Norcross

**DATE:**      February 16, 2007

**RE:**        Mann v. Plus One Holdings, Inc.

**NUMBER OF PAGES (INCLUDING COVER):** 7

**MESSAGE:** We received your message that you do not have pages 15 through 20 of Plus One's Employee Handbook. Copies of those pages are attached.

This cover sheet and any documents that accompany it contain confidential and legally privileged information intended only for the individual(s) named. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or other use of these documents is strictly prohibited and that the documents should be returned to the above address immediately.

FEB 1 6 2007

EEOC NYDO ENFORCEMENT

JM 0022

## H.    INVESTIGATIONS OF CURRENT EMPLOYEES

The Company may occasionally find it necessary to investigate current Employees, where behavior or other relevant circumstances raise relevant questions. Employee investigations may, where appropriate, include credit reports and investigations of criminal convictions. In the event that a background check is conducted, the Company will comply with the federal Fair Credit Reporting Act and applicable state laws, including providing the Employee with any required notices and forms. Employees subject to an investigation are required to cooperate with the Company's lawful efforts to obtain relevant information, and may be disciplined up to and including termination for failure to do so.

## I.    PERFORMANCE EVALUATIONS

Performance evaluations may be conducted from time to time to provide both you and your Manager with the opportunity to discuss your job tasks, identify and correct weaknesses, encourage and recognize strengths, and discuss methods for improving your performance. However, please understand that a positive performance evaluation does not guarantee an increase in salary, a promotion, or continued employment. Compensation increases and the terms and conditions of employment, including job assignments, transfers, promotions, and demotions, are determined by and at the discretion of Plus One. In addition to these more formal performance evaluations, the Company encourages you and your Manager to discuss your job performance on an ongoing basis.

## J.    IMPROVING EMPLOYEE JOB PERFORMANCE

Plus One believes in the principle that Employees should ordinarily be given the opportunity to improve upon any deficiencies in their job performance. When the Company determines that an Employee is a candidate for improvement, the Company will attempt to help the Employee meet the Company's expectations. However, any effort to work with Employees to overcome performance problems should not be deemed as changing the Company's policy of at-will employment.

## K.    CLIENT RELATIONS

Plus One's success depends on satisfying our clients. Employees of Plus One are expected to treat clients courteously and with the utmost respect at all times. You must attend to our clients' questions and requests promptly and professionally. If you need assistance, please contact your Manager or another Employee who you know will be able to assist you and/or the client.



FEB 16 2007

LEG  NYDO ENFORCEMENT

## L.    CONFIDENTIALITY

Information about Plus One, its Employees, clients, suppliers, and vendors is to be kept confidential and divulged only to individuals within the Company with both a need to receive and authorization to receive the information. If in doubt as to whether information should be divulged, err in favor of not divulging information and discuss the situation with your Manager. All records and files maintained by the Company are confidential and remain the property of the Company. Records and files are not to be disclosed to any outside party without the express permission of the President, Chief Operating Officer, or Vice President of Human Resources. Confidential information includes, but is in no way limited to: financial records; business, marketing, and strategic plans; personnel and payroll records regarding current and former Employees; the identity of, contact information for, and any other account information on clients, vendors, and suppliers; inventions, videos, programs, members' files or prescriptions, trade secrets, formulas, techniques, and processes; and any other documents or information regarding the Company's operations, procedures, or practices. Confidential information may not be removed from Company premises without express authorization. Confidential information obtained during or through employment with the Company may not be used by any Employee for the purpose of furthering current or future outside employment or activities or for obtaining personal gain or profit. The Company reserves the right to avail itself of all legal or equitable remedies to prevent impermissible use of confidential information or to recover damages incurred as a result of the impermissible use of confidential information. Certain Employees may also be required to enter into written confidentiality agreements confirming their understanding of the Company's confidentiality policies.

Employees are instructed to refer all employment reference inquiries regarding current or former Plus One employees to the Human Resources Department.

## M.    EMPLOYEE DRESS & PERSONAL APPEARANCE

You are expected to report to work well groomed, clean, and dressed professionally according to the requirements of your position. Employees may be required to wear uniforms provided by Plus One. Please contact your Manager for specific information regarding acceptable attire for your position. If you report to work dressed or groomed unprofessionally, you may be prevented from working until you return to work well groomed and wearing the proper attire.

FEB 1 6 2007

EEOC-NYDO ENFORCEMENT

JM 0024

## VI.    PLUS ONE FACILITIES

### A.    POLICIES AGAINST WORKPLACE VIOLENCE

#### 1.    Statement of Policy

Acts or threats of physical violence, including intimidation, harassment, and/or coercion, that involve or affect the Company or that occur on Company property or in the conduct of Company business off Company property, will not be tolerated. This prohibition against threats and acts of violence applies to all persons involved in Company operations, including, but not limited to, Plus One personnel, contract workers and temporary employees. Violations of this policy, by any individual, may lead to disciplinary action, up to and including termination of employment, and/or legal action, as appropriate.

This policy is intended to bring Plus One into compliance with existing legal provisions requiring employers to provide a safe workplace; it is not intended to create any obligations beyond those required by existing law.

#### 2.    Definitions

Workplace violence is any intentional conduct that is sufficiently severe, offensive, or intimidating to cause an individual to be adversely affected with respect to — or to reasonably fear for — his or her personal safety or the safety of his or her family, friends, and/or property such that employment conditions are altered or a hostile, abusive, or intimidating work environment is created for one or more Plus One Employees. Workplace violence may involve any threats or acts of violence occurring on Company premises, regardless of the relationship between the Company and the parties involved in the incident. It also includes threats or acts of violence that affect the business interests of the Company or that may lead to an incident of violence on Company premises. Threats or acts of violence occurring off Company premises that involve Employees, agents, or individuals acting as a representative of the Company, whether as victims of or active participants in the conduct, may also constitute workplace violence. Specific examples of conduct that may constitute threats or acts of violence under this policy include, but are not limited to, the following:

a.  Threats or acts of physical or aggressive contact directed toward another individual;

b.  Threats or acts of physical harm directed toward an individual or his/her family, friends, associates, or property;

c.  The intentional destruction or threat of destruction of Company property or another Employee's property;

d.  Harassing or threatening phone calls;

e.  Surveillance;

f.  Stalking;

g.  Veiled threats of physical harm or similar intimidation; and

h.  Any conduct resulting in the conviction under any criminal code provision relating to violence or threats of violence that adversely affects the Company's legitimate business interests.

Updated: May, 2001                        17



FEB 1 6 2007

JM 0025

Threats of workplace violence do not refer to occasional comments of a socially acceptable nature. Rather, it refers to behavior that is personally offensive, threatening, or intimidating.

### 3.    Enforcement

Any person who engages in a threat of violence or violent action on Company property may be removed from the premises as quickly as safety permits and may be required, at the Company's discretion, to remain off Company premises pending the outcome of an investigation of the incident.

When threats are made or acts of violence are committed by an Employee, a judgment will be made by the Company as to what actions are appropriate with respect to that Employee, including disciplinary action up to and including discharge.

**Important Note:** Plus One will make the sole determination of whether, and to what extent, threats or acts of violence will be acted upon by the Company. In making this determination, the Company may undertake a case-by-case analysis in order to ascertain whether there is a reasonable basis to believe that workplace violence has occurred. **No provision of this policy alters the at-will nature of employment at Plus One.**

## B.    OPERATION OF VEHICLES

Employees driving on Company business—whether in a Company-owned or leased vehicle, a rented vehicle, an Employee's own vehicle, or any other vehicle—are not permitted to engage in unauthorized activity or travel. The use of Company-owned or leased vehicles and rental of vehicles for Company business is limited to authorized Employees. These vehicles must only be used in work-related activities and may not be used for personal business or activities without the express prior approval of management.

All Employees authorized to drive Company-owned or leased vehicles or to rent vehicles for use in conducting Company business must possess a current, valid driver's license and an acceptable driving record. Any change in license status or driving record must be reported to management immediately.

A valid driver's license must be in your possession while operating a vehicle off or on Company property. It is the responsibility of every Employee to drive safely and obey all traffic, vehicle safety, and parking laws or regulations. Drivers must demonstrate safe-driving habits at all times.

Certain Employees may drive their own personal vehicles while conducting Company business. These Employees must maintain adequate personal automobile liability insurance. Employees doing so should promptly submit an expense report detailing the number of miles driven on Company business. The Company will pay mileage reimbursement in accordance with applicable reimbursement rates. Employees are expected to observe the above policies while driving on Company business, even if operating personal vehicles.

## C.    USE OF EQUIPMENT

All Company property—including but not limited to desks, storage areas, work areas, lockers, file cabinets, computer systems, office telephones, cellular telephones, modems, facsimile machines, duplicating machines, exercise equipment and exercise testing equipment—must be used properly and maintained in good working order. Employees who lose, misappropriate, or misuse Company property may be personally liable for the replacement or repair of the item and may be subject to discipline, up to and including discharge.

Updated: May, 2001                    18

FEB 1 6 2007
EEOC-NYDO ENFORCEMENT

The Company reserves the right, at all times and without prior notice, to inspect and search any and all of its property to determine whether any Company policy has been violated, or when necessary for purposes of promoting safety in the workplace or compliance with applicable law. These inspections may be conducted during or after business hours and in the presence or absence of the Employee.

In order to ensure the safety and security of Employees and clients, and to protect the Company's legitimate business interests, Plus One reserves the right to question and inspect or search any Employee or other individual entering onto or leaving Company premises. The inspection or search may include any packages or items that the individual may be carrying, including briefcases, handbags, knapsacks, and shopping bags. These items are subject to inspection and search at any time, with or without prior notice. The Company also may require Employees while on the job or on the Company's premises to agree to reasonable inspection of their personal property and/or persons. The individual may be requested to self-inspect his or her personal property or person by displaying the contents of any packages and/or turning out his or her pockets in the presence of a representative of the Company, typically a management Employee of the same gender. The Company will not tolerate an Employee's refusal to cooperate in these procedures.

The Company's technical resources, such as its computer, voice mail, and e-mail systems, are provided for use in Company business and are to be reviewed, monitored, and used in that pursuit only, except as provided in this policy. As a result, computer data, voice mail messages, and e-mail transmissions are readily available to numerous persons. That which is stored or transmitted on the Company's computer systems or other technical resources is subject to the investigation, search, and review of others in accordance with this policy. In addition, any electronically stored communications sent or received from others may be retrieved and reviewed when, in Plus One's judgment, doing so serves the legitimate business interests and obligations of the Company.

Employees are otherwise permitted to use the Company's designated equipment for occasional, non-work purposes with permission from their direct Manager. Nevertheless, Employees have no right of privacy as to any information or file maintained in or on the Company's property or transmitted or stored through the Company's computer systems, voice mail, e-mail, or other technical resources. All bills and other documentation related to the use of Company equipment, property, and technical resources are the property of the Company and may be reviewed and used for purposes that the Company considers appropriate.

Employees may access only files or programs, whether computerized or not, that they have permission or are authorized to enter. Computer software is protected from unauthorized copying and use by law. Unauthorized copying or use of computer software may expose both the Company and the individual Employee to substantial fines and/or penalties. Therefore, Employees may not load personal software onto the Company's computer system, and may not copy software from Company's computer system for personal use. All Employees must contact the Vice President of Operations for permission to install any software on the Company's computer system. Unauthorized review, duplication, dissemination, removal, installation, damage, or alteration of files, passwords, computer systems or programs, or other property of the Company, or improper use of information obtained by unauthorized means, may be grounds for disciplinary action, up to and including discharge.

Messages stored and/or transmitted by voice mail or e-mail must not contain content that may reasonably be considered harassing to any Employee or that creates a hostile environment for any Employee.

Updated: May, 2001                                    19



FEB 1 6 2007

EEOC NYDO ENFORCEMENT

### D.  SOLICITATION & DISTRIBUTION OF LITERATURE

Approaching fellow Employees in the workplace regarding outside activities, organizations, or causes, regardless of how worthwhile, important, or benevolent, can create unnecessary apprehension and pressures for fellow Employees. This conduct is, therefore, generally inappropriate. The Company has established rules, applicable to all Employees, to govern solicitation and distribution of written material during working time and entry onto the premises and work areas. All Employees are expected to comply strictly with these rules. 1. No Employee shall solicit or promote support for any cause or organization during his or her working time or during the working time of the Employee or Employees at whom the activity is directed; 2. No Employee shall distribute or circulate any written or printed material in work areas at any time, during his or her working time, or during the working time of the Employee or Employees at whom the activity is directed; and 3. Under no circumstances will non-Employees be permitted to solicit or to distribute written material for any purpose on Company property. As used in this policy, "working time" includes all time for which an Employee is paid and/or is scheduled to be performing services for the Company; it does not include break periods, meal periods, or periods in which an Employee is not, and is not scheduled to be, performing services or work for the Company.

### E.  SMOKING POLICY

Employees, clients, vendors, and other guests are not allowed to smoke in Company or clients' facilities at any time.

### F.  HEALTH & SAFETY

The health and safety of Employees and others on Company property are of critical concern to Plus One. The Company intends to comply with all health and safety laws applicable to our business.

To this end, the Company must rely upon Employees to ensure that work areas are kept safe and free of hazardous conditions. Employees are required to be conscientious about workplace safety, including proper operating methods and known dangerous conditions or hazards. Any unsafe conditions or potential hazards should be reported to a Manager *immediately*, even if the problem appears to be corrected. Any suspicion of a concealed danger present on the Company's premises, or in a product, facility, piece of equipment, process, or business practice for which the Company is responsible should be brought to the attention of a Manager or the Vice President Director of Operations, *immediately*.

Periodically, the Company may issue rules and guidelines governing workplace safety and health. All Employees should familiarize themselves with these rules and guidelines as strict compliance will be expected. Contact your Manager for copies of current rules and guidelines. Failure to comply strictly with rules and guidelines regarding health and safety or negligent work performance that endangers health and safety will not be tolerated.

Any workplace injury, accident, or illness *must* be reported to the Employee's Manager as soon as possible, regardless of the severity of the injury or accident. If medical attention is required immediately, Managers will assist Employees in obtaining medical care, after which the details of the injury or accident must be reported.

Updated: May, 2001    20

FEB 16 2007
EEOC-NYDO ENFORCEMENT

JM 0028



**U.S. Equal Employment Opportunity Commission**
**New York District Office**

33 Whitehall Street
5th Floor
New York, NY 10004
(212) 336-3620
TTY (212) 336-3622
FAX (212) 336-3625
1-800-669-4000

Charging Party:     Jordan Mann
EEOC Charge No.: 520-2006-01431

November 30, 2006

Russell E. Adler, Esq.
Wolf Block
250 Park Avenue
New York, NY 10177

Dear Mr. Adler::

Your client (Plus One Holdings, Inc.) is hereby requested to submit information and records relevant to the subject charge of discrimination. The Commission is required by law to investigate charges filed with it, and the enclosed request for information does not necessarily represent the entire body of evidence which we need to obtain from your organization in order that a proper determination as to merits of the charge can be made. Please submit a response to the requested information by the deadline cited below.

The information will only be disclosed in accordance with 29 C.F.R. 1601.22, or otherwise made public if the charge results in litigation.

Sincerely,

Joan Marchese
Senior Investigator
(212) 336-3782

Response Deadline Date: December 15, 2006

The following dates are considered to be the "relevant period" for the attached Request for Information:
January 1, 2003 - November 30, 2006

JM00 29

Charging Party:        Jordan Mann
EEOC Charge No.:       520-2006-01431

1.   Provide the complete personnel file for each Charging Party, to include all disciplinary notes/actions, performance evaluations, complaints (to include all complaints made by the Charging Party).

2.   Provide a copy of Respondent's employee manual.

3.   Provide a copy of Respondent's policies and procedures with respect to disciplinary action, termination, employee complaints, etc.

4.   Provide a detailed explanation as to how Plus One was informed by Trump World Tower that Charging Party was not welcome as a Plus One employee on its premises.  If this was in writing, provide a copy of the written documentation.  If this was a verbal request, provide the name and position title of the "Trump" employee who made the request and the recipient to whom the request was made to.

5.   For the period of January 1, 2003 and up until the present time, provide the names of all employees who have complained of discriminatory employment practices, to include:

      a.     position title,
      b.     date of hire,
      c.     the date and stated reason for the complaint,
      d.     what, if any action was taken,
      e.     the status of their employment.  If separated, the date and reason for separation

6.   Provide the name and position title for a contact person at Trump World Tower.

JM0030

# WolfBlock

250 Park Avenue, New York, NY 10177
Tel: (212) 986-1116 ■ Fax: (212) 986-0604 ■ www.WolfBlock.com

Russell E. Adler
Direct Dial: (212) 883-4950
Direct Fax: (212) 672-1150
E-mail:    radler@wolfblock.com

August 24, 2006

## VIA FACSIMILE (212) 336-3790

Joan Marchese, Investigator
United States Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York, 10004

Re:    Mann v. Plus One Holdings, Inc.
       EEOC Charge No. 520-2006-01431

Dear Ms. Marchese:

We are counsel for Plus One Holdings, Inc., Respondent in the above-referenced matter, and hereby confirm the EEOC's consent to an extension of time to respond to claimant's charge until and including September 19, 2006.

Furthermore, this letter shall serve as our notice of appearance in this matter. Please direct all future correspondence, whether oral or written, to my attention. Thank you.

Very truly yours,

Russell E. Adler
For WOLF, BLOCK, SCHORR and SOLIS-COHEN LLP

NYC:707231.1/plu016-237341

Boston, MA ■ Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE
WolfBlock Government Relations - Harrisburg, PA ■ WolfBlock Public Strategies - Boston, MA and Washington, DC
Wolf, Block, Schorr and Solis-Cohen LLP, a Pennsylvania Limited Liability Partnership

*** TOTAL PAGE.02 ***

Received  Aug-24-2006  11:30am    From-212+297+2699        To-EEOC-NYDO [6]        Page 002

Jm 00 31

# WolfBlock

250 Park Avenue, New York, New York 10177
Tel: (212) 986-1116 ■ Fax: (212) 986-0604 ■ www.WolfBlock.com

# Facsimile Transmittal

**Number of Pages**
(including this cover):

**2**

Date:        August 24, 2006

To:          Joan Marchese, Investigator
             Equal Employment Opportunity Commission
Fax #:       (212) 336-3790
Phone #:

From:        Russell E. Adler, Esq.
Phone #:     (212) 883-4985
Fax #:       (212) 672-1185

Client:    plu016
Matter:    237341

If you have problems receiving this transmission, please contact the sender at the number above.

NOTE: The comments on and attachment to this cover sheet are intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to us at the above address, via the U.S. Postal Service. Thank you.

NYC:707277.1/plu016-237341

Boston, MA ■ Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE
WolfBlock Government Relations - Harrisburg, PA ■ WolfBlock Public Strategies - Boston, MA and Washington, DC
Wolf, Block, Schorr and Solis-Cohen LLP, a Pennsylvania Limited Liability Partnership

Received  Aug-24-2006  11:30am   From-212+297+2699      To-EEOC-NYDO [6]        Page 001    Jm 0032

September 6, 2006



Attn: Joan Marchese
EEOC
30 Whitehall Street
5th floor
New York 10004

**RE: More information -  EEOC Charge No: 520-2006-01431**

Dear Joan:

Please be advised that my mailing address has changed. Please send all future
correspondence to:

Jordan Mann
80 St. Nicholas Ave., #5A
New York, NY 10026

Also, here is additional contact information for the organization/employer that
discriminated against me for this case:

John Henriques, Building manager  646 313 7614
Thomas Pienkos, VP of Operations 212 715 7298
Trump World Tower Condimiums
845 UN Ltd. Partnership
845 United Nations Plaza
New York, NY 10017

JM 0033

**September 6, 2006**


Attn: Joan Marchese
EEOC
30 Whitehall Street
5th floor
New York 10004


**RE: More information -  EEOC Charge No: 520-2006-01431**

Dear Joan:

Please be advised that my mailing address has changed. Please send all future
correspondence to:


Jordan Mann
80 St. Nicholas Ave., #5A
New York, NY 10026


Also, here is additional contact information for the organization/employer that
discriminated against me for this case:

John Henriques, Building manager  646 313 7614
Thomas Pienkos, VP of Operations 212 715 7298
Trump World Tower Condimiums
845 UN Ltd. Partnership
845 United Nations Plaza
New York, NY 10017

JM 0034

September 6, 2006


Attn: Joan Marchese
EEOC
30 Whitehall Street
5th floor
New York 10004


**RE: More information -  EEOC Charge No: 520-2006-01431**

Dear Joan:

Please be advised that my mailing address has changed. Please send all future correspondence to:


Jordan Mann
80 St. Nicholas Ave., #5A
New York, NY 10026


Also, here is additional contact information for the organization/employer that discriminated against me for this case:

John Henriques, Building manager  646 313 7614
Thomas Pienkos, VP of Operations 212 715 7298
Trump World Tower Condimiums
845 UN Ltd. Partnership
845 United Nations Plaza
New York, NY 10017

Jm 00 35

September 6, 2006

Attn: Joan Marchese
EEOC
30 Whitehall Street
5th floor
New York 10004

RE: More information -  EEOC Charge No: 520-2006-01431

Dear Joan:

Please be advised that my mailing address has changed. Please send all future
correspondence to:

Jordan Mann
80 St. Nicholas Ave., #5A
New York, NY 10026

Also, here is additional contact information for the organization/employer that
discriminated against me for this case:

John Henriques, Building manager  646 313 7614
Thomas Pienkos, VP of Operations 212 715 7298
Trump World Tower Condimiums
845 UN Ltd. Partnership
845 United Nations Plaza
New York, NY 10017

Jm 0036

September 6, 2006


Attn: Joan Marchese
EEOC
30 Whitehall Street
5th floor
New York 10004


**RE: More information -  EEOC Charge No: 520-2006-01431**

Dear Joan:

Please be advised that my mailing address has changed. Please send all future
correspondence to:


Jordan Mann
80 St. Nicholas Ave., #5A
New York, NY 10026


Also, here is additional contact information for the organization/employer that
discriminated against me for this case:

John Henriques, Building manager  646 313 7614
Thomas Pienkos, VP of Operations 212 715 7298
Trump World Tower Condimiums
845 UN Ltd. Partnership
845 United Nations Plaza
New York, NY 10017

Jm 0037

**September 6, 2006**


Attn: Joan Marchese
EEOC
30 Whitehall Street
5th floor
New York 10004


**RE: More information – EEOC Charge No: 520-2006-01431**

Dear Joan:

Please be advised that my mailing address has changed. Please send all future correspondence to:


Jordan Mann
80 St. Nicholas Ave., #5A
New York, NY 10026


Also, here is additional contact information for the organization/employer that discriminated against me for this case:

John Henriques, Building manager  646 313 7614
Thomas Pienkos, VP of Operations 212 715 7298
Trump World Tower Condimiums
845 UN Ltd. Partnership
845 United Nations Plaza
New York, NY 10017


Jm 0038

**Confidential**

I was the only one sent home although the resident Robert verbally threatened my supervisor Mike Murray and Ryan Fairall (both white males).

Other co-workers openly violated various policies but their violations weren't addressed by management:

Magalay Maisonet(maintenance person – Latina woman) – huge hoop earrings and came to work with hair looking wet consistently with gel, etc. Hair in face)
Ryan Fairall(exercise specialist – White male) – wearing gel consistently to have hair stand straight up to 3 inches.
Christina(evening receptionist – Latina woman) – long hair consistently in face and never pulled back. Hair wet at work with gel.
Sylvia A.(lifeguard – White woman) – hair in face consistently.
Kenrick(maintenance person – Black male) – large tattoos on both forearms. Consistently used fitness equipment and sauna during work hours.

*Please note that no PlusOne employee at the site had similar hair texture to me. The other Black person, Kenrick, shaved his head. I was the only one being singled out, even though I violated no policy.

In the Trump/Plus One policy, it stated specifically:
No tattoos
No excessive gel in hair
Hair must not look wet
Hair must not be in face
If hair is long and in face, it must be pulled back.
No employee shall use the Trump facilities while the gym is open

Former PlusOne employee Mark Shavo(white male) received severance pay from the company.

JM 00039

**Confidential**

I was the only one sent home although the resident Robert verbally threatened my supervisor Mike Murray and Ryan Fairall (both white males).

Other co-workers openly violated various policies but their violations weren't addressed by management:

Magalay Maisonet(maintenance person – Latina woman) – huge hoop earrings and came to work with hair looking wet consistently with gel, etc. Hair in face)
Ryan Fairall(exercise specialist – White male) – wearing gel consistently to have hair stand straight up to 3 inches.
Christina(evening receptionist – Latina woman) – long hair consistently in face and never pulled back. Hair wet at work with gel.
Sylvia A.(lifeguard – White woman) – hair in face consistently.
Kenrick(maintenance person -- Black male) – large tattoos on both forearms. Consistently used fitness equipment and sauna during work hours.

*Please note that no PlusOne employee at the site had similar hair texture to me. The other Black person, Kenrick, shaved his head. I was the only one being singled out, even though I violated no policy.

In the Trump/Plus One policy, it stated specifically:
No tattoos
No excessive gel in hair
Hair must not look wet
Hair must not be in face
If hair is long and in face, it must be pulled back.
No employee shall use the Trump facilities while the gym is open

Former PlusOne employee Mark Shavo(white male) received severance pay from the company.

Jm 0080

## MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:     (609) 249-5860
FACSIMILE:       (609) 945-3912
E-mail:   dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

# FAX COVER SHEET

**TO:**       Joan Marchese

**FAX:**      (212) 336-3625

**FROM:**     Deborah Martin Norcross

**DATE:**     December 4, 2006

**RE:**       Mann v. Plus One Holdings, Inc.

**NUMBER OF PAGES (INCLUDING COVER):**   3

**MESSAGE:**  Please see attached.

This cover sheet and any documents that accompany it contain confidential and legally privileged information intended only for the individual(s) named. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or other use of these documents is strictly prohibited and that the documents should be returned to the above address immediately.

Jm 0041

**MARTINNORCROSS** LLC

PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:    (609) 249-5860
FACSIMILE:      (609) 945-3912
E-mail:  dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

December 4, 2006

**By Facsimile: (212) 336-3625**
Joan Marchese
Investigator
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, New York 10004

Re:   *Mann v. Plus One Holdings, Inc.*
      *Charge No. 520-2006-01431*

Dear Ms. Marchese:

Your recent request for additional information was sent to Plus One's former counsel, who fortunately forwarded it to our client promptly.

I have attached a copy of our November 2, 2006 notice of appearance/substitution of counsel. To avoid forwarding delays especially as we approach the holidays, we would be grateful if you would please be sure to direct any future communications to me, and not to WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP. Please feel free to use e-mail if you like.

Thank you for your assistance.

Very truly yours,

Deborah Martin Norcross

Jm 0042

FILE COPY

**MARTINNORCROSS** LLC

PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:     (609) 249-5860
FACSIMILE:       (609) 945-3912
E-mail:   dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

November 2, 2006

*By Facsimile: (212) 336-3790*
Joan Marchese
Investigator
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, New York 10004

                                    Re:    *Mann v. Plus One Holdings, Inc.*
                                           *Charge No. 520-2006-01431*

Dear Ms. Marchese:

     My firm has been retained as labor and employment counsel for Respondent Plus
One Holdings, Inc. (Plus One). I will be responsible for representing Plus One in the
above-referenced charge. Please direct all communications in this matter, whether written
or oral, to me rather than to WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP.

     Thank you for your assistance.

                                           Very truly yours,

                                           Deborah Martin Norcross

cc:    Chidi Eze, Esq. (By Facsimile)

JM 0043



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

# T E L E C O P I E R   T R A N S M I T T A L
## OFFICIAL GOVERNMENT BUSINESS

| TO: | Recipient: | Russell E. Adler, Esq. | |
|---|---|---|---|
| | Location: | Wolf Block | |
| | Fax number: | 212-986-0604 | Phone #: |
| | # of pages incl. cover sheet: | 2 | |
| | Date: | 11/30/06 | |

| FROM: | Sender: | **Joan Marchese, Investigator** |
|---|---|---|
| | Telephone number: | (212) 336-3782 |
| | Fax number: | (212) 336-3790 |

**MESSAGE:**  Request for Information re: Mann v. Plus One Holdings, Inc.

Charge No. 520-2006-01431

---

### CONFIDENTIALITY NOTICE

This communication is intended for the sole use of the person to whom it is addressed and may contain information that is privileged, confidential, and exempt from disclosure.

Any dissemination, distributions, or copying of this communication by anyone other than the intended recipient or the person responsible for its delivery is strictly prohibited.

If you have received this communication in error, please phone the sender immediately (if necessary, call collect) and either destroy the communication or return it to the above address.

---

### SPECIAL INSTRUCTIONS

If you do not receive all pages or there are problems with the transmission, you should immediately phone the above sender.  If you discover missing pages or other problems with the transmission at a later time, contact the sender at his/her telephone number indicated above.

JM0044

Confirmation Report - Memory Send

```
Page      : 001
Date & Time: Nov-29-2006  02:45pm
Line 1    : +2123363790
Line 2    : 2123363790
Machine ID : EEOC-NYDO [6]
```

| | | |
|---|---|---|
| Job number | : | 018 |
| Date | : | Nov-29 02:43pm |
| To | : | ☎012129886005 |
| Number of pages | : | 003 |
| Start time | : | Nov-29 02:44pm |
| End time | : | Nov-29 02:45pm |
| Pages sent | : | 003 |
| Status | : | OK |

Job number    : 018        *** SEND SUCCESSFUL ***



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

## TELECOPIER TRANSMITTAL
OFFICIAL GOVERNMENT BUSINESS

| TO: | Recipient: | Kenneth S. Allen, Esq. | |
|---|---|---|---|
| | Location: | West Shore | |
| | Fax number: | 212-986-6005 | Phone #: |
| | # of pages incl. cover sheet: | 3 | |
| | Date: | 11/29/06 | |

| FROM: | Sender: | Gina Pennisano, Investigator |
|---|---|---|
| | Telephone number: | (212) 336-1782 |
| | Fax number: | (212) 336-3790 |

MESSAGE:  Request for Information for Matz v. Plus One Holdings, Inc.
Charge No. 520-2006-01431

### CONFIDENTIALITY NOTICE

This communication is intended for the sold use of the person to whom it is addressed and may contain
information that is privileged, confidential, and exempt from disclosure.

Any dissemination, distribution, or copying of this communication by anyone other than the intended recipient
or the person responsible for its delivery is strictly prohibited.

If you have received this communication in error, please notify the sender immediately (if necessary, call collect)
and either destroy the communication or return it to the address below.

### TRANSMISSION INSTRUCTIONS

If you do not receive all pages or items are garbled during the transmission, you should immediately phone the
above sender.  If you discover missing pages or other problems with the transmission at a later time, contact the
sender at his/her telephone number indicated above.

JM 0045

# MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:     (609) 249-5860
FACSIMILE:       (609) 945-3912
E-mail:   dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

November 2, 2006

**By Facsimile: (212) 336-3790**
Joan Marchese
Investigator
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, New York 10004

Re:    *Mann v. Plus One Holdings, Inc.*
*Charge No. 520-2006-01431*

Dear Ms. Marchese:

My firm has been retained as labor and employment counsel for Respondent Plus One Holdings, Inc. (Plus One). I will be responsible for representing Plus One in the above-referenced charge. Please direct all communications in this matter, whether written or oral, to me rather than to WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP.

Thank you for your assistance.

Very truly yours,

Deborah Martin Norcross

cc:    Chidi Eze, Esq. (By Facsimile)

## MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:     (609) 249-5860
FACSIMILE:       (609) 945-3912
E-mail:   dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

# FAX COVER SHEET

**TO:**          Joan Marchese

**FAX:**         (212) 336-3790

**FROM:**        Deborah Martin Norcross

**DATE:**        November 2, 2006

**RE:**          Mann v. Plus One Holdings, Inc.

**NUMBER OF PAGES (INCLUDING COVER):**   2

**MESSAGE:**

This cover sheet and any documents that accompany it contain confidential and legally privileged information intended only for the individual(s) named. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or other use of these documents is strictly prohibited and that the documents should be returned to the above address immediately.

---

JM 0048

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA | 520-2006-01431 |
| ☑ EEOC | |

and EEOC

State or local Agency, if any

| NAME (Indicate Mr., Ms., Mrs.) | HOME TELEPHONE (Include Area Code) |
|---|---|
| Ms. Jordan Mann | 917 705 9660 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| 80 St. Nicholas Ave., #5A NY NY 10026 | | 10-8-68 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (Include Area Code) |
|---|---|---|
| Plus One Holdings | 750 nationwide | 212 791 2300 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 75 Maiden Lane, 8th fl, NY NY | | |

| NAME | TELEPHONE NUMBER (Include Area Code) |
|---|---|
| Dave Milani | 646 312 6225 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| Same as above | | |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

☑ RACE  ☐ COLOR  ☑ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☑ RETALIATION  ☐ AGE  ☐ DISABILITY  ☑ OTHER (Specify)
Afro Hair Style.

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

The Respondents here subjected my to Race & Sex Discrimination, Hostile Work Environment based on my race, they retaliated against me in terminating my employment because of my race, color and possibly my sex. I did not get Severance pay because I am a black female. Part of the reasons I was fired is because I made complaints of Racial Harrassment and racially threatening behavior to the police. I was Subjected to hostile work environment and termination because I wore an afro hairdo. I was fired because I also reported the racial harrassment to our COO & President of my Company

Please see attached Statement for Complete story.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary for State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |

SIGNATURE OF COMPLAINANT

Date _____ Jordan _____
Charging Party (Signature)

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(Day, month, and year)
AUG 0 3 20__
EEOC NYDO EEO

EEOC FORM 5 (REV. 3/01)

(please go to statement where the notary public signed)

JM 0049

MOHINDER S GILL
NOTARY PUBLIC, State of New York
No. 6U469935
Qualified in New York County

STATE OF NEW YORK
COUNTY OF NEW YORK

**JORDAN MANN'S statement**

In August 2002, Plus One Fitness hired me, Jordan Mann as a massage therapist. I performed massage duties at different corporate sites managed by Plus One for other companies such as Goldman Sach, Merrill Lynch. On March 6, 2006, I took on additional duties as a full-time receptionist at the Trump World Towers site. At my initial hire date, my hair was an Afro and has been the same since. No one ever objected to my hair until April 5, 2006. Below is an account of when the racial discrimination and harassment started within the scope of my employment.

**April 5, 2006 @ Trump World Tower**
Plus One regional vice president Jamie MacDonald told me that I was not allowed to wear my Afro at the Trump World Towers and ordered me to change it right away. He said my Afro violated the Trump Organization's policy and if I didn't get rid of it or change it, there would be serious consequences, meaning termination. He also made derogatory comments about my hair. I told him that what he said was racially and culturally insensitive and disrespectful. Immediately after being reprimanded by MacDonald because of my hair, I called my immediate supervisor Tom Niszczak to report the harassment and discrimination. Niszczak told me to call the vice president of human resources Bob Welter.

**April 6, 2006**
The next day, MacDonald furnished me with a copy of the Trump Organization's hair policy. He continued to say I violated the policy which stated, "buns, twists, should not be more than 3 inches above head." I told him that my hair is not a bun nor twist and I couldn't change the way my hair grew. MacDonald also emailed my immediate supervisor Tom Nizsczak who hired me, that the Trump Organization objected to my Afro. I told MacDonald again that my hair grew naturally like this. MacDonald said that the Organization didn't make allowances for "individuals" with hair like me. He warned me again to change my hair.

I called Bob Welter and expressed my concern about Jamie McDonald's harassment. I repeated to Bob that I felt that this was racially and culturally discriminatory. During the conversation Bob asked me what did my hair look like. I said I had an Afro and that I felt I was being harassed because James didn't like my Afro because it showed my African-American heritage. He then said he would investigate the matter next week and get back to me.

**April 10, 2006 @ Plus One Corporate Headquarters**
Had a meeting with manager of Human Resources, Heather Davis. I repeated the incidents of harassment and discrimination to which I had been subjected. She told me that I must cut my hair because it was "shocking." She gave me an ultimatum: either cut off my hair or transfer to another Plus One site. I said I wouldn't cut off my hair, so I was forced to take a transfer. Then she said that a transfer wasn't guaranteed and that it looked likely that I would not have a job. I asked for her statements in writing and she refused.

I was puzzled because I initiated the meeting to discuss the harassment and discrimination but instead, Davis continued the discrimination because she said my hair was unacceptable too. She said my hair was inappropriate because it was "shocking," unsuitable for a five star caliber place such as Trump Tower. I asked why my discrimination allegations were not being investigated. I then said I had filed paperwork with the Equal Employment Opportunity Commission. She said that my job was in jeopardy if I didn't do something about my hair. Meeting was promptly adjourned.

**April 11, 2006**
Because I: 1) felt that Heather Davis continued the discrimination, 2)didn't know how my hair violated hair policy and 3) unclear about my employment status with Plus One, I emailed Vice President of Human Resources, Bob Welter to request a meeting to get answers. No reply that day.

JmDO 50

**April 12, 2006**
Approximately 7:30am, Chief Operating Office Chris Ciatto paid me a surprise visit at the Trump World Tower site. He told me he was responding to my action of contacting the EEOC. I told him about the discrimination and harassment I felt I was being subjected to. Ciatto asked me why the other Black women's hair in the office didn't look like mine; hence, he told me to get braids or cut my hair. I told him that many Black women chemically straighten their hair. I also said that I don't chemically straighten my hair for health reasons nor would I get braids because the synthetic material of braids would damage my chemical free-natural hair. Ciatto ended the meeting with my employment still being in question.

**April 20, 2006**
I email Chris Ciatto to find out who has the final word on my termination. No response.

Late morning, Bob Welter, vice president of Human Resources calls me at the Trump World Tower site. He said that Chris Ciatto emailed Bob to handle the situation. We set up a meeting the next day.

**April 21, 2006**
Met with Bob Welter, vice president of Human Resources who continued to say that my hair violated policy because it did not comply with the rule: "buns, twists, etc., should not be more than three inches above head." We then made a verbal agreement that if I could prove my hair was not more than three inches above my head, I could continue to work at Trump World Tower. I put a ruler on top of my skull and Bob verbally confirmed that my hair was not three inches above my hair. He then did not honor our agreement and said he didn't like my hair because " it stands too straight up" and that it was unacceptable for a place like Trump. He sent me home for one day to figure out how to change my hair to suit him.

I also told him about the discrimination and harassment I felt I was being subjected to but he would not address it and refused to investigate it.

**April 27, 2006**
I sent another email to Bob Welter stating that I proved that I did not violate their interpretation of the hair policy but wanted something in writing from Bob as to why he introduced a new reason why he felt I didn't comply. Up to this date, no manager/executive was able to say how my hair violated policy. Each Plus One worker only expressed his or her dislike to the way my Afro looked and grew.

**April 28,2006**
Approximately 1:40pm I retrieved an email from Bob Welter. At my dismay, the discrimination was not addressed or why Plus One, acting as a Trump representative.

**Approximately 5:00pm**
My immediate supervisor Tom Niszczak, called me on my cell phone to say that Bob Welter said that there was a condition that if I didn't change my hair, then I would be terminated.

**Monday, May 1, 2006**
I emailed Chris Ciatto, COO again. At this point, it had been weeks and he had not gotten back to me from our first meeting on April 12. And as a result, never addressed anything or never got back to me. In the email to Chris, I recapped how James, Heather and Bob Welter discriminated against me and that no one in human resources chose to investigate my harassment and discrimination charges. I further wrote of my considerable emotional and physical stress I had been experiencing because of all the incidents. And because of the undue humiliation I had been subjected to, I said I would not take any more meetings regarding my hair without my lawyer present.

JmDO 51

No word from Chris Ciatto. I become increasingly worried and anxiety-ridden because Bob Welter said I was going to be fired.

**Friday, May 5, 2006**
As a last resort, I emailed the president of the company Michael Motta. He said my Afro was now appropriate but he refused to investigate my harassment/discrimination claim.

**A couple weeks later**
The new Trump World Tower site manager Chris Garcia singles me out again in reference to the hair/grooming policy. I again contacted Motta about the harassment. Nothing was ever done or investigated.

**June 8**
The new site manager Mike Murray asked me to find out the full identity of a resident, known as "Robert." who was verbally harassing another resident Lily Wong. While I trying to find out the information for Murray, the resident Robert came down to start harassing me saying that it was none of my business to know that information. For the rest of my shift, Robert cursed at me and verbally threatened me and Plus One staff. Visibly shaken, my manager, Murray told me to go home and he would take care of handling the abusive resident.  Later that day, he told me that Trump security and the building manager was alerted and that the resident was "taken care of."

**June 9**
The next day on my shift, the same resident came into the healthclub area and started threatening me again. Extremely frightened, police and Trump security were called. After the police and Trump security left the healthclub, the regional vice president Jamie MacDonald called me and told me to go home indefinitely with paid. I was sent home for calling the police to protect myself against a resident/user of the healthclub.

**June 13**
New vice president of human resources Dave Milani said that I should look for another job because upper management didn't like the harassment/discrimination charges I was alleging and filing with the EEOC.

**June 16**
Dave Milani fired me over the phone. He said I was fired because I called the police. He continued to say "Trump didn't like it and we here at PlusOne didn't like that." In addition, he said I would not be eligible for severance because I had intentions to follow through with my EEOC case.

JM 0052

# MARTINNORCROSS LLC

PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION

60 MARION ROAD WEST                           379 THORNALL STREET
PRINCETON, NEW JERSEY 08540                   EDISON, NEW JERSEY 08837
DIRECT DIAL:      (609) 249-5860
FACSIMILE:        (609) 945-3912              110 WALL STREET
E-mail:   dmartinnorcross@patmedia.net        NEW YORK, NEW YORK 10004

November 2, 2006

*By Facsimile: (212) 336-3790*
Joan Marchese
Investigator
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, New York 10004

> Re:  *Mann v. Plus One Holdings, Inc.*
> *Charge No. 520-2006-01431*

Dear Ms. Marchese:

   My firm has been retained as labor and employment counsel for Respondent Plus One Holdings, Inc. (Plus One). I will be responsible for representing Plus One in the above-referenced charge. Please direct all communications in this matter, whether written or oral, to me rather than to WOLF, BLOCK, SCHORR AND SOLIS-COHEN, LLP.

   Thank you for your assistance.

                              Very truly yours,

                              Deborah Martin Norcross

cc:   Chidi Eze, Esq. (By Facsimile)

Jm 8053

11/2   Rs new atty

Mann v Plus One

repr. Resp

dren't see any

520   2006 0143/

Deborah- Martin
Norchross
609-249-5860.

212'

JM 0054

## MARTINNORCROSS LLC

*PRACTICE LIMITED TO EMPLOYMENT MATTERS AND RELATED LITIGATION*

60 MARION ROAD WEST
PRINCETON, NEW JERSEY 08540
DIRECT DIAL:     (609) 249-5860
FACSIMILE:       (609) 945-3912
E-mail:   dmartinnorcross@patmedia.net

379 THORNALL STREET
EDISON, NEW JERSEY 08837

110 WALL STREET
NEW YORK, NEW YORK 10004

# FAX COVER SHEET

**TO:**       Joan Marchese

**FAX:**      (212) 336-3790

**FROM:**     Deborah Martin Norcross

**DATE:**     November 2, 2006

**RE:**       Mann v. Plus One Holdings, Inc.

**NUMBER OF PAGES (INCLUDING COVER):**  2

**MESSAGE:**   *I am resending this, just in case the original does not make its way to your desk*

This cover sheet and any documents that accompany it contain confidential and legally privileged information intended only for the individual(s) named.  If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or other use of these documents is strictly prohibited and that the documents should be returned to the above address immediately.

JM 0055



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5ᵗʰ Floor
New York, NY 10004-2112
Phone: (212) 336-3620
General Fax: (212) 336-3625
TTY: (212) 336-3622

Joan Marchese
Investigator
Phone (212) 336-3782
Fax (212) 336-3790

September 21, 2006

Ms. Jordan Mann
80 St. Nicholas Avenue
#5A
New York, NY 10026

Re:  Jordan Mann v. Plu One Holdings
     Charge No.  520-2006-01431

Dear Ms. Mann:

Enclosed is a copy of Respondent's Position Statement recently received.

If you wish to rebut what has been stated, please submit your written rebuttal along with all supporting information on or before October 12, 2006.

Thank you for your cooperation in this matter.

Sincerely,

Joan Marchese
Senior Investigator

JM0056

# WolfBlock

250 Park Avenue, New York, NY 10177
Tel: (212) 986-1116 ■ Fax: (212) 986-0604 ■ www.WolfBlock.com

Russell E. Adler
Direct Dial: (212) 883-4950
Direct Fax: (212) 672-1150
E-mail:  radler@wolfblock.com

September 19, 2006

**VIA FACSIMILE (212) 336-3790**
**& FIRST CLASS MAIL**

Ms. Joan Matchese, Investigator
United States Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, New York  10004

      Re:    Mann v. Plus One Holdings, Inc.
             EEOC Charge No. 520-2006-01431
             Respondent's Statement of Position

Dear Ms. Marchese:

    We are counsel for Respondent, Plus One Holdings, Inc. ("Plus One") and hereby submit this statement of position in response to Complainant Jordan Mann's charge of unlawful discrimination.[1]

Summary of Position

    Ms. Mann's charge accurately notes that after she complained of alleged harassment and discrimination with regard to her Afro hairstyle, Plus One advised Ms. Mann that her Afro was acceptable under Plus One's personal appearance policy.  Thus, by her own admission,

---

[1]    Plus One notes that Ms. Mann is bound by the terms of an arbitration agreement binding upon all Plus One employees and that this response is not a waiver of Plus One's right to enforce the arbitration agreement and/or preclude Ms. Mann from any recovery obtained by the EEOC on her behalf.  In addition, this Statement of Position is also submitted by Respondent in an effort to assist the EEOC in informally conciliating this charge and, as such, is governed by and protected from disclosure by Sections 706(b) and 709(c) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(b) and 2000e-8(e).

NYC:708165.1/plu016-237341

Boston, MA ■ Cherry Hill, NJ ■ Harrisburg, PA ■ New York, NY ■ Norristown, PA ■ Philadelphia, PA ■ Roseland, NJ ■ Wilmington, DE

WolfBlock Government Relations - Harrisburg, PA ■ WolfBlock Public Strategies - Boston, MA and Washington, DC

Wolf, Block, Schorr and Solis-Cohen LLP, a Pennsylvania Limited Liability Partnership

Jm 0057